IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUANA LUTSE,

     Plaintiff,

vs.                                                                                     Civ. No. 04-0037 JP/WDS

CITY OF GALLUP; DANIEL KNEALE;
MATTHEW WRIGHT; RICKY WHITE;
REGION II NARCOTICS TASK FORCE;
and UNKNOWN PERSONS 1 THROUGH 100;

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On May 14, 2004, Defendants City of Gallup, Daniel Kneale, Matthew Wright, and Ricky White (Police Defendants) filed a Motion to Dismiss and Motion for Qualified Immunity (Doc. No. 15).[1]  On March 31, 2005, Mr. William Stripp, counsel for Plaintiff, and Mr. Gregory Pelton, counsel for the Police Defendants, argued the Police Defendants' motion at the pretrial conference.  Having considered the briefs, oral argument, and the relevant law, the Court finds that the Plaintiff's claims against the Police Defendants and Defendant Region II Narcotics Task Force should be dismissed with prejudice.  In addition, the Court finds that the Police Defendants' request for an award of attorney's fees should be denied.

---

[1]On August 3, 2004, the Court dismissed with prejudice Plaintiff's claims against Defendants Arum Kumar aka Arun Kumar; Nita Patel; OM 2000 Corporation; OM 2000 Construction, Inc.; and Hospitality Express Inns, Inc.  Order of Dismissal with Prejudice of Certain Claims (Doc. No. 24).  The Court notes that the Plaintiff in her response to the motion to dismiss and for qualified immunity mistakenly treats Defendant Region II Narcotics Task Force as a movant.  In addition, there was some confusion at the March 31, 2005 pretrial conference as to whether  Defendant Region II Narcotics Task Force was properly served and whether Defendant Region II Narcotics Task Force is even subject to suit considering the nature of the organization. Defendant Region II Narcotics Task Force has not answered the complaint.

A.  Background

From November 2002 through May 28, 2003, the Plaintiff and her boyfriend resided at the Ranchito Motel in Gallup, New Mexico.  Arum Kumar and his wife, Nita Patel, were jointly responsible for managing the Ranchito Motel during that time.  Kumar was also a confidential informant for Defendant Region II Narcotics Task Force and the Gallup Police Department where Defendant Kneale was police chief and Defendants Wright and White were employed as detectives.  On the evening of May 28, 2003, Kumar entered Plaintiff's motel room and shot her in the abdomen.  This lawsuit arises from that shooting.

The Plaintiff alleges that Defendant Region II Narcotics Task Force and the Police Defendants advised Kumar to carry a gun which he apparently did.  Plaintiff also alleges that Defendant Region II Narcotics Task Force and the Police Defendants knew that Kumar was a habitual user of crack cocaine and alcohol, and previous to May 28, 2003, had shot his gun inside different rooms at the Ranchito Motel.  Plaintiff further alleges that Defendants "Wright and White took Kumar into custody on the night of the shooting, but then brought him back to the motel, even though they knew he was intoxicated."  ¶24 of Complaint.  During the pretrial conference, Mr. Stripp clarified this last allegation by stating that Kumar had already shot the Plaintiff before Defendants Wright and White took Kumar into custody and then brought him back to the Ranchito Motel knowing that Kumar was intoxicated.

The Plaintiff brings two causes of actions against Defendant Region II Narcotics Task Force and the Police Defendants.  First, the Plaintiff alleges that these Defendants deprived the Plaintiff of her Fourteenth Amendment right to substantive due process under the New Mexico Tort Claims Act (NMTCA).  Second, the Plaintiff alleges that these Defendants deprived the

2

Plaintiff of her Fourteenth Amendment right to substantive due process under 42 U.S.C. §1983.

Plaintiff's substantive due process claims are based on the "danger creation" doctrine. The Plaintiff contends that Defendant Region II Narcotics Task Force and the Police Defendants created a dangerous situation for the Plaintiff and other residents of the Ranchito Motel because these Defendants encouraged Kumar to carry a gun although he was a known cocaine user and abuser of alcohol and because these Defendants knew Kumar had previously fired his gun inside the Ranchito Motel.  Plaintiff further contends that Defendants Region II Narcotics Task Force and City of Gallup "created policies and customs, which encouraged and supported the actions of the law enforcement officers involved in creating the danger that Kumar presented to [Plaintiff]." ¶59 of Complaint.  The Plaintiff seeks special and general damages for the two substantive due process claims as well as punitive damages for the alleged §1983 violation.

B.  Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The Court may dismiss the complaint if it appears to a certainty that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

C.  Discussion

The Police Defendants raise the following arguments in support of their motion to dismiss and for qualified immunity:  1) the individual Police Defendants are entitled to qualified immunity[2]; 2) neither the individual Police Defendants nor Kumar were acting "under color of state law" when Kumar shot Plaintiff; 3) the individual Police Defendants did not have a duty to protect Plaintiff; 4) the individual Police Defendants did not create the danger which harmed Plaintiff; 5) simple negligence is insufficient for a §1983 civil rights claim; 6) the failure to arrest Kumar is not a §1983 civil rights violation; 7) Defendant City of Gallup did not have a municipal policy or custom which violated Plaintiff's §1983 civil rights; 8) the individual Police Defendants are not vicariously liable for Kumar's actions under either §1983 or the NMTCA; and 9) there is no waiver of immunity under the NMTCA.

The crux of Plaintiff's response to the Motion to Dismiss and Motion for Qualified Immunity is that the individual Police Defendants' qualified immunity defense under §1983 fails because Plaintiff has sufficiently pled a Fourteenth Amendment danger creation claim which was clearly established at the time of the shooting.  To support her response, the Plaintiff presents additional facts, not alleged in the complaint, which she believes will be elicited during discovery.[3] However, "[t]he nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*,

---

[2]The Plaintiff does not state in her complaint whether she is suing Defendants Kneale, Wright, and White in their individual and/or official capacities.  Mr. Stripp clarified at the pretrial conference that Plaintiff is suing Defendants Kneale, Wright, and White in their individual capacities only.

[3]Discovery has been stayed pending a ruling on this motion to dismiss and for qualified immunity.  Order (Doc. No. 28), filed Sept. 9, 2004.

40 F.3d 337, 340 (10th Cir. 1994).  The Court, therefore, cannot consider these additional "facts" in deciding this Rule 12(b)(6) motion to dismiss and for qualified immunity.

Interestingly, the Plaintiff did not respond to the Police Defendants' other arguments in favor of dismissal.  Consequently, the Court finds that the Plaintiff has consented to dismissing the NMTCA claims against the Police Defendants and the §1983 claim against Defendant City of Gallup.  *See* D.N.M. LR-Civ. 7.1(b)("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").  Since the Plaintiff has treated this motion to dismiss as including Defendant Region II Narcotics Task Force as a movant, the Court concludes that the Plaintiff's failure to respond to the Police Defendants' arguments, other than the qualified immunity argument, constitutes consent to also dismiss the NMTCA and §1983 claims against Defendant Region II Narcotics Task Force.

Moreover, the Court finds that dismissal of those claims against Defendant Region II Narcotics Task Force is appropriate because the Plaintiff has failed diligently to prosecute her claims against Defendant Region II Narcotics Task Force.  *See In re Lundahl*, 109 Fed. Appx. 384, 386 (10th Cir. 2004)(court has inherent power to dismiss claim *sua sponte* for failure to prosecute). At the pretrial conference on March 31, 2005, counsel questioned whether Defendant Region II Narcotics Task Force is an entity subject to suit.  Mr. Stripp, Plaintiff's counsel, stated that Defendant Region II Narcotics Task Force was served by the delivery of copies of the Summons and Complaint to Mary de la O, a dispatcher-receptionist in the office of Defendant Region II Narcotics Task Force in the City of Gallup.  Mr. Pelton, counsel for the Police Defendants, stated, however, that he believed that Mary de la O was an employee of the City of

5

Gallup and not authorized to accept service on behalf of Defendant Region II Narcotics Task Force.  The Court file contains a Return of Service indicating that copies of the Summons and Complaint were served on December 16, 2003 on Mary de la O, but Defendant Region II Narcotics Task Force is not identified in the body of the Return of Service.  It is questionable whether delivering copies of the Summons and Complaint to Mary de la O constituted proper service of process on Defendant Region II narcotics Task Force, even if it is an entity capable of being sued.  More than 15 months have passed since the Plaintiff named Region II Narcotics Task Force as a Defendant in her Complaint and since service of process on it apparently was attempted by delivering papers to Mary de la O.  Plaintiff has taken no other action in regard to Defendant Region II Narcotics Task Force.

With respect to the Plaintiff's §1983 claims against the individual Police Defendants, the Court finds it is preferable to address the qualified immunity issue (to which Plaintiff did respond) rather than to dismiss those claims solely on the basis of the Plaintiff's failure to respond to the Police Defendants' other arguments in favor of dismissal of Plaintiff's claims against the individual Police Defendants.

The Tenth Circuit recently articulated the test for qualified immunity when raised in a motion to dismiss.

> Once a defendant raises qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has alleged a violation of federal law. *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir.2004). If the answer is "yes," then the court must decide whether the right was clearly established when the alleged violation occurred. *Id.; see also Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir.2003). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Although the very conduct in question need not have

6

been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent."
*Id*. If a plaintiff fails to demonstrate that a defendant's conduct violated the law, then we
need not reach the additional question of whether the law was clearly established. *Butler v.
Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir.2003).

*Marino v. Mayger*, 118 Fed. Appx. 393, 398 (10th Cir. 2004)(footnote omitted).  Here, the

Plaintiff alleges that her Fourteenth Amendment substantive due process right was violated when

the individual Police Defendants created a dangerous situation which resulted in Kumar shooting

her.

      The contours of a danger creation cause of action under the Due Process Clause are

well-established in the Tenth Circuit. *See Ruiz v. McDonnell*, 299 F. 3d 1173, 1182-83 (10th

Cir. 2002), *cert. denied*, 538 U.S. 999 (2003); *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir.),

*cert. denied*, 534 U.S. 1019 (2001); *Armijo by and through Chavez v. Wagon Mound Public

Schools*, 159 F.3d 1253, 1262-63 (10th Cir. 1998). "To make out a proper danger creation claim,

a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors

created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff

was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at

substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5)

defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when

viewed in total, is conscience shocking." *Currier*, 242 F.3d at 918.   The Tenth Circuit explained

the first element by stating that "if the danger to the plaintiff existed before the state's intervention,

then even if the state put the plaintiff back in that same danger, the state would not be liable

because it could not have created a danger that already existed." *Armijo*, 159 F.3d at 1263.  In

essence, the danger-creation theory focuses on the affirmative actions of the state in placing the

plaintiff in harm's way and "'effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.  Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur.'"  *Id.* (quoting *Johnson v. Dallas Independent School Dist.*, 38 F.3d 198, 201 (5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995)). Consequently, it is not sufficient to claim that a state actor passively allowed the *status quo* to persist or failed to come to the rescue after an individual was placed in harm's way. Rather, a plaintiff must establish that a state actor actively changed the *status quo* by causing the plaintiff to be put in a position where the plaintiff was more vulnerable to the alleged harm.  *See also Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003)(defendants cannot be liable under danger creation theory if the "danger" in question existed prior to the defendants' intervention); *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1263 (10th Cir. 2002), *cert. granted*, 125 S.Ct. 417 (2004)("it is important to distinguish between affirmative conduct that creates or enhances a danger and a failure to act that merely does not decrease or eliminate a pre-existing danger."); *Currier*, 242 F.3d at 917 (no danger creation liability when state placed victim "in no worse position than that in which he would have been had it not acted at all...."). The affirmative conduct required to state a claim under the danger creation theory "should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183.  This "conduct should be directed at a discrete plaintiff rather than at the public at large." *Id.*; *see, e.g., Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998); *Davis v. Fulton County, Ark.*, 90 F.3d 1346, 1351 (8th Cir. 1996); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir.), *cert.*

*denied*, 516 U.S. 858 (1995).  Thus, state action which presents a threat of indefinite range and

duration and does not, in and of itself, directly place a particular individual in danger generally

cannot form the basis for a danger creation cause of action.  *Ruiz*, 299 F.3d at 1183.  The court

must also be aware that "[w]hile it is true that inaction can often be artfully recharacterized as

'action,' courts should resist the temptation to inject this alternate framework into omission cases

by stretching the concept of 'affirmative acts' beyond the context of immediate interactions

between the officer and the plaintiff."  *Pinder v. Johnson*, 54 F.3d 1169, 1176 (4th Cir.), *cert.*

*denied*, 516 U.S. 994 (1995).  Finally, with respect to the last element of the danger creation

doctrine, "ordinary negligence does not shock the conscience."  *Ruiz,* 299 F.3d at 1183.

  The Plaintiff argues that she has stated a danger creation claim because the individual

Police Defendants advised Kumar to carry a gun when they were aware that Kumar was a habitual

crack cocaine and alcohol abuser, and the individual Police Defendants knew that Kumar had a

history of shooting a gun inside the Ranchito Motel.  Plaintiff's argument is flawed for several

reasons.  First, Plaintiff does not allege that but for the individual Police Defendants' advice to

carry a gun, Kumar would have been unarmed on the evening he shot Plaintiff.  Interestingly,

there are no allegations that the individual Police Defendants knew Kumar was armed that night.

Consequently, the Plaintiff does not allege facts showing that the individual Police Defendants

engaged in an affirmative act by arming Kumar on the night he shot Plaintiff.  Second, Plaintiff

does not allege that the individual Police Defendants' conduct was directed specifically toward

Plaintiff rather than toward the public at large.  There are no allegations that the individual Police

Defendants were aware of any animosity or trouble between Kumar and Plaintiff which they

should have been monitoring, or that the individual Police Defendants should have been protective

of the Plaintiff because of her involvement in any police investigations as a suspect, an informant, or a witness. Plaintiff does not allege that the individual Police Defendants even knew who she was prior to the shooting. In fact, there are no allegations to contravene the possibility that Kumar could have just as easily left the Ranchito Motel in an intoxicated state on May 28, 2003 and shot some other member of the public. In other words, Kumar's shooting of Plaintiff was random. Third, the Plaintiff does not allege that the individual Police Defendants caused Kumar to be intoxicated prior to his shooting of the Plaintiff on the evening of May 28, 2003. Fourth, considering Kumar's prior history of intoxication and drug use as well as his having fired a weapon, I conclude that the danger of Kumar being intoxicated and armed at the Ranchito Motel existed prior to Kumar's shooting of Plaintiff.[4] The actions of the individual Police Defendants on the evening of May 28, 2003, therefore, did not change the *status quo* at the Ranchito Motel. In sum, the individual Police Defendants did not create or increase a danger to Plaintiff on May 28, 2003 and they did not act recklessly in disregard of any obvious and substantial risk to Plaintiff, in particular.

Furthermore, this case is analogous to *Ruiz, infra*. In *Ruiz*, the plaintiff took her infant son to a daycare facility, operated by a husband and wife, at which plaintiff's son received severe and ultimately fatal injuries from violent shaking. The plaintiff in *Ruiz* alleged that the facility should not have been licensed because the state defendants failed to uncover the couple's history of domestic violence and because of the facility's lack of public liability insurance. According to the plaintiff, these failures constituted a danger creation cause of action. The Tenth Circuit

---

[4]The Court notes that being intoxicated at one's business is not, in and of itself, illegal. Additionally, there are no allegations that Kumar unlawfully carried a weapon.

10

dismissed the danger creation cause of action for failure to state a claim under Rule 12(b)(6) for

two reasons.  First, the Tenth Circuit found that the plaintiff did not allege facts which

demonstrated an affirmative action by the state defendants which created or increased the danger

to her son.  The Tenth Circuit held:

> we do not view the mere licensure of Tender Heart as constituting the requisite affirmative
> conduct necessary to state a viable §1983 claim.  Specifically, the improper licensure did
> not impose an immediate threat of harm.  Rather, it presented a threat of an indefinite
> range and duration.  Moreover, the licensure affected the public at large; it was not aimed
> at J.R. or Ms. Ruiz directly.  Unlike the direct placement of child into an abusive home,
> the mere licensure of Tender Heart was not an act directed at J.R. which, in and of itself,
> placed J.R. in danger.

299 F.3d at 1183.  Like the child in *Ruiz* who attended the daycare facility regularly, Plaintiff

Lutse resided at a place where the threat of harm was presumably present on an ongoing basis due

to Kumar's drug and alcohol use and history of firing his gun.  This ongoing threat of harm,

similar to that in *Ruiz*, did not impose an immediate threat of harm to Plaintiff, but rather

presented at best a threat of indefinite range and duration.  In *Ruiz*, this kind of situation did not

create a direct threat to the plaintiff's child but instead created a threat that affected the public at

large, which included all of the children who stayed at the daycare facility.  By analogy, Kumar

did not present a direct threat to just the Plaintiff, but instead, Kumar presented a threat of harm

to all of the residents at the Ranchito Motel, i.e., the public at large.  Moreover, in *Ruiz,* the state

defendants did not act affirmatively because they did not actually place the child at the daycare

facility, a situation similar to this one where the individual Police Defendants likewise did not

place the Plaintiff in the Ranchito Motel.

Second, the Tenth Circuit in *Ruiz* held that the plaintiff did not allege facts sufficient to

establish the "shocks the conscience" element because the state defendants' failures did not rise

above the level of negligence.  *Id*. at  1184.  Although unfortunate, the Plaintiff in this case simply failed to allege facts showing that the individual Police Defendants knew or should have known that Kumar posed a substantial risk of serious, immediate, and proximate harm to Plaintiff, in particular.  The individual Police Defendants' alleged actions, therefore, do not satisfy the shock the conscience element by rising above the level of negligence. Since the Plaintiff has not alleged a constitutional violation cognizable under §1983, the individual Police Defendants are entitled to qualified immunity.

Considering the complex nature of a danger creation theory, the Court will deny the Police Defendants' request for attorney's fees.

IT IS ORDERED that:

1.  the Police Defendants' Motion to Dismiss and Motion for Qualified Immunity (Doc. No. 15) is granted in that all of the Plaintiff's claims against the Police Defendants and Defendant Region II Narcotics Task Force will be dismissed with prejudice; and

2.  the Police Defendants' request for an award of attorney's fees is denied.

_____

SENIOR UNITED STATES DISTRICT JUDGE